UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE CONTINENTAL INSURANCE
COMPANY,

          Plaintiff,

v.                                                                              Case No: 6:20-cv-1439-WWB-DCI

NATIONWIDE INSURANCE COMPANY
OF AMERICA,

          Defendant.
                                             /

## ORDER

THIS CAUSE is before the Court on Plaintiff's Dispositive Motion for Summary Judgment (Doc. 25), Defendant's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion (Doc. 29), Plaintiff's Response to Defendant's Cross-Motion (Doc. 36), Defendant's Reply (Doc. 39), and Plaintiff's Surreply (Doc. 42).

**I.     BACKGROUND**

The Continental Insurance Company ("**Continental**") filed the instant declaratory action seeking a declaration that Nationwide Insurance Company of America ("**Nationwide**") has a duty to defend and a duty to indemnify NCP Fund I Holding, LLC ("**NCP**") in an underlying personal injury action (the "**Underlying Action**"). (*See generally* Doc. 12). The Underlying Action was brought by Paul and Sharon Rafferty against NCP and Blue Coast Bakers, LLC ("**Blue Coast**"). (*See generally* Doc. 12-1).

On or about August 28, 2014, Blue Coast and NCP entered into a Lease Agreement and Memorandum of Lease (collectively, the "**Lease**") that memorialized Blue Coast's lease of the property and refrigerated industrial/warehouse building at 1899

Highway 1, Ormond Beach, Florida (the "**Commercial Building**") from NCP.  (Doc. 25-1; Doc. 25-2).  As required by the Lease, Blue Coast obtained an insurance policy from Nationwide for the term of February 1, 2017, through February 1, 2018 (the "**Nationwide Policy**").  (Doc. 12-2; Doc. 25-1 at 5).  The Nationwide Policy includes an endorsement entitled "Additional Insured – Managers or Lessors of Premises" (the "**Additional Insured Endorsement**") that provides insurance for additional insureds who are lessors of the Commercial Building.  (Doc. 25-4 at 1).  The Additional Insured Endorsement states:

> Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

(*Id.*).  The Schedule includes "Designation of Premises (Part Leased To You): 1899 N US HIGHWAY 1 ORMOND BEACH, FL 32174-2549" and "Name of Person(s) Or Organization(s) (Additional Insured): NCP FUND 1 HOLDINGS, LLC 64 WALL STREET STE 212 NORWALK, CT 06850."  (*Id.*).  The Additional Insured Endorsement also reads in part, "If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured."  (*Id.*).

In addition, the "Commercial General Liability Coverage Enhancement Endorsement Including Medical Payments" states:

> **SECTION II – WHO IS AN INSURED** is amended as follows:
>
> . . . .
>
> **2.** The following is added:

> **4. Additional Insured – Automatic Status When Required in an Agreement With You**
>
> **Who Is An Insured** includes person(s) or organization(s) described in Paragraphs **a. – i.** below with whom you have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.
>
> . . . .
>
> **e.   Managers, or Lessors of Leased Premises** – with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you.

(Doc. 25-5 at 1–2).

On September 15, 2017, Mr. Rafferty fell from a ladder anchored to the Commercial Building while trying to repair an exterior motion light. (Doc. 12-1, ¶¶ 5, 7). Continental is defending NCP in the Underlying Action but argues that because NCP is an additional insured under Blue Coast's Nationwide Policy and the Nationwide Policy is the primary policy, Nationwide, not Continental, should be defending NCP in the Underlying Action. (Doc. 12, ¶¶ 1, 13). Because Nationwide refuses to defend NCP, Continental seeks to recover the fees and expenses it has incurred in defending NCP in the Underlying Action. (*Id.* ¶¶ 34–36).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of

material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

### III. DISCUSSION

The parties essentially dispute whether NCP is an insured under the Nationwide Policy based on the facts alleged in the Complaint. Nationwide asserts that NCP is not an additional insured in this respect because the ladder and roof were not part of the premises leased to Blue Coast by NCP. If NCP is not an insured, then Nationwide has no duty to defend or to indemnify.

#### A.   Whether NCP is an Insured Under the Policy

"The duty to defend does not hinge on the true facts that gave rise to the cause of action against the insured, the insured's version of those facts, or the insured's defenses to the underlying complaint." *Liberty Mut. Fire Ins. Co. v. Mark Yacht Club on Brickell*

*Bay, Inc.*, No. 09-20022-CIV, 2009 WL 2633064, at *3 (S.D. Fla. Aug. 25, 2009) (citing *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004)); *see also Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005) ("[W]hen the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." (quotation omitted)). The insurer is obligated to defend the entire suit if the complaint alleges facts partially within and partially outside the scope of coverage. *Auto-Owners Ins. Co. v. Globe Int'l Ministries, Inc.*, No. 3:14cv150/MCR/CJK, 2015 WL 11110847, at *3 (N.D. Fla. Sept. 26, 2015) (citation omitted). Further, the Court should resolve any doubts regarding the duty to defend in favor of the insured. *Id.* (citing *Harford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006)). "The duty to indemnify is separate and distinct from the duty to defend" and is "measured by the facts as they unfold at trial or are inherent in a settlement agreement." *Hatmaker v. Liberty Mut. Fire Ins. Co.*, 308 F. Supp. 2d 1308, 1313 (M.D. Fla. 2004) (citation omitted). Because "the duty to indemnify is narrower than the duty to defend . . . [it] cannot exist if there is no duty to defend." *Founders Ins. Co. v. Pickell*, No. 6:11-cv-1309-Orl-36GJK, 2013 WL 12159202, at *4 (M.D. Fla. Mar. 22, 2013) (citing *Wellcare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 905 (Fla. 2d DCA 2009)).

Continental argues that Nationwide has a duty to defend NCP in the Underlying Action because NCP qualifies as an additional insured under Nationwide's Policy and Mr. Rafferty's injury occurred while he was conducting maintenance on the property for Blue Coast. (Doc. 25 at 11–12). Nationwide responds that it has no duty to defend because the roof and exterior wall of the leased building—where the injury occurred—were not

5

part of the premises leased to Blue Coast.  (Doc. 29 at 2).  Rather, Nationwide argues the Lease prohibited Blue Coast from accessing the roof, and the responsibility of maintaining the exterior walls—to which the ladder used to access the roof was attached—was assigned exclusively to NCP.  (*Id.*).  In other words, Nationwide alleges that NCP only leased the use of the interior space of the building to Blue Coast.  (*Id.*).

"Under Florida law, the interpretation of insurance contract provisions, including resolving ambiguities in the contract, is a matter of law to be decided by the court."  *RSUI Indem. Co. v. Benderson Dev. Co.*, No. 2:09-cv-88-FtM-29DNF, 2011 WL 32318, at *3 (M.D. Fla. Jan. 5, 2011) (footnote omitted) (citing *Adelberg v. Berkshire Life Ins. Co.*, 97 F.3d 470, 472 (11th Cir. 1996)).  "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."  *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).  "The 'terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties—not a strained, forced or unrealistic construction.'"  *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1356 (S.D. Fla. 2017) (quoting *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002)).  To that end, a court may only consider the language in the insurance policy to construe the parties' intent and may not resort to extrinsic evidence unless the policy is ambiguous.  *Id.* (citing *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001)).  An insurance policy is ambiguous "if there is more than one reasonable interpretation . . . and it should be construed against the insurer."  *Id.* (quotation omitted). Finally, it is "well-settled that insuring or coverage clauses are construed in the broadest

6

possible manner to effect the greatest extent of coverage." *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997) (citation omitted).

Here, neither party disputes that the Lease should be considered to determine whether NCP is an insured under the Nationwide Policy and the Nationwide Policy refers to the Lease in connection with the scope of liability. Therefore, it is appropriate to examine the Lease to determine the scope of liability.[1] *See Depositors Ins. Co. v. Loan Ranger Acquisitions, LLC*, 457 F. Supp. 3d 1255, 1260 (M.D. Fla. 2020) (concluding that an additional insured endorsement incorporated portions of the lease limiting additional insured coverage because the endorsement referred to the scope of insurance the lease required the insured to obtain); *Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co.*, No. 03-80106-CIV, 2008 WL 544732, at *5 (S.D. Fla. Feb. 26, 2008) (finding that the policy referred to and incorporated the lease agreement as evidenced by the language "for whom you have agreed in writing to provide liability insurance" and "[t]he insurance provided by the amendment . . . [a]pplies only to coverage and limits of insurance required by the written agreement").

The Court first looks to the Additional Insured Endorsement to determine if NCP is in fact an Additional Insured under the Nationwide Policy. The Additional Insured Endorsement designates the premises—the "part leased" to Blue Coast—as "1899 N US Highway 1, Ormond Beach, FL 32174-2549." (Doc. 25-4 at 1). The Additional Insured Endorsement further provides that NCP is an Additional Insured "with respect to liability

---

[1] The Court, however, will not consider Nationwide's expert affidavit that offers an opinion as to how the lease should be construed or any other extrinsic evidence offered by either party. *RSUI Indem. Co.*, 2011 WL 32318, at *4 ("Since the Court has determined that the contract is unambiguous, it may not rely on any extrinsic evidence, including expert testimony.") (citing *Fireman's Fund Ins. Co.*, 254 F.3d at 1003)).

7

arising out of the ownership, maintenance or use of that part of the premises leased to [Blue Coast]." (*Id.*). That language alone provides that the part leased to Blue Coast is the premises located at the address listed.

Further, the Lease sets forth that "Landlord leases to Tenant and Tenant leases from Landlord the Premises, together with the right in common with others to use the Common Areas." (Doc. 25-1 at 4). The Lease defines the "Premises" as "193,297 sf refrigerated industrial/warehouse building in Ormond Beach, FL, just north of Daytona Beach on Highway 1 as shown on **Exhibit 'A'**." (*Id.* at 3). The "'Common Areas' means all areas and facilities as provided by Landlord from time to time for the use or enjoyment of all tenants in the Building or Property, including, if applicable, driveways, sidewalks, parking, loading and landscaped areas." (*Id.* at 15). The Lease provides that Blue Coast "shall Maintain the Premises and all fixtures and equipment in the Premises" save for the roof, the exterior walls, building systems, and the common areas. (*Id.* at 5). The Lease, however, requires Blue Coast to obtain written permission from NCP to go onto the roof. (*Id.* at 18).

Although Nationwide asks this Court to limit the leased portions of the Premises to those portions of the Premises to which Blue Coast has exclusive possession, neither the Additional Insured Endorsement nor the Lease contain such a limitation. Thus, "lease" will be given its ordinary meaning. Lease is defined as "a contract by which one conveys real estate, equipment, or facilities for a specified term and for a specified rent." *Lease*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/lease (last visited Sept. 24, 2021). Applying the plain meaning of "lease" to the Additional

8

Insured Endorsement and the Lease, it is clear that the premises leased to Blue Coast is the building itself and is not limited to the interior of the building.

Nationwide, however, argues in its Reply that it is not required to defend for injuries that resulted from *maintenance* of the premises because the Lease only requires insurance for "Tenant's *use* of the Property." (Doc. 39 at 6). Nationwide's argument is not well taken. The Additional Insured Endorsement states that "the insurance afforded to such additional insured will not be broader than that which you are required under the contract or agreement to provide for such additional insured." (*Id.* at 6; *see also* Doc. 25-4 at 1). The Lease, in turn, provides: "Tenant, at its expense, shall keep in effect commercial general liability insurance, including blanket contractual liability insurance, covering Tenant's use of the Property. . . ." (Doc. 25-1 at 5). The Lease describes "Use" as "Industrial/bakery operations, with appurtenant offices[,]" and states that the Tenant shall occupy and use the premises only for such purposes. (*Id.* at 3–4). The Lease also requires Blue Coast to "Maintain the Premises" as part of its use. (*Id.* at 5).

Florida law construes "'[a]rising out of' as 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.'" *Zurich*, 246 F. Supp. 3d at 1357 (quoting *Taurus Holdings, Inc. v. U.S. Fid. Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005)). However, there must be a causal connection or relationship beyond mere coincidence between the injury and the use of the property. *Id.* The Underlying Action alleges that Mr. Rafferty was hired to repair an exterior motion light and he was injured while doing so. It is reasonable to conclude that Blue Coast's maintenance of the premises originated from, grew out of, flowed from, was incident to, or was connected with its use of the Property. *See id.* at 1357–59 (finding that the insurer had a duty to

defend under a similar additional insured endorsement where employee was injured after repairing leak on roof as instructed by employer because the liability arose out of the maintenance of the premises leased by the employer); *Ring Power Corp. v. Amerisure Ins. Co.*, 326 F. App'x 502, 504 (11th Cir. 2009) (finding lessor was an additional insured because lessee's subcontractor's use of rented equipment flowed from and had a connection with the lessee's use of the rented equipment).

Nationwide's insistence that this case is on fours with *Hilton Hotels Corp. v. Employers Ins. Of Wausau*, 629 So. 2d 1064, 1064–65 (Fla. 3d DCA 1994), is not persuasive. In that case, an employee of a gift shop leasing space in a hotel was injured in the hotel lobby while walking to work. *Id.* at 1064. The injury was unrelated to the gift shop save for the fact that the injured person was the gift shop's employee. *Id.* at 1065. The Third District Court of Appeal found this connection to be too remote to fall under the gift shop's insurance policy that included the hotel as an additional insured. *Id.* The connection between Mr. Rafferty's injury and Blue Coast's use of the leased premises is not as fortuitous as an employee falling an undetermined distance from her place of employment.

Based on the foregoing, summary judgment will be entered in favor of Continental as to the duty to defend. Continental's claim as to Nationwide's duty to indemnify, however, is premature because it is not ripe for adjudication until the Underlying Action is resolved and will therefore be dismissed without prejudice. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019); *see also J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014)

("The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims.").

### B.      Whether Continental has Proven the Amount Owed

As for Continental's argument that it is entitled to its costs and attorney's fees for defending NCP in the Underlying Action, Nationwide responds that Continental has not supported its assertions with evidence.  (Doc. 29 at 5).  Accordingly, Continental filed an affidavit attesting the amount it has paid in attorney's fees and costs in defending NCP. (Doc. 36-2).  Nationwide does not dispute entitlement in the event this Court finds for Continental but argues that the affidavit attached to Continental's Response is insufficient to establish the amount owed as it provides no details regarding hours, rates, or activity descriptions.  (Doc. 39 at 7–8).

"[W]here the relationship between the insurers is one of *excess and primary*, as opposed to *co-primary*, attorney's fees are recoverable." *Liberty Mut. Fire Ins. Co. v. S.-Owners Ins. Co.*, No. 18-81018-CV, 2019 WL 2103472, at *3 (S.D. Fla. Feb. 8, 2019); *see also Am. Home Assur. Co. v. City of Opa Locka*, 368 So. 2d 416, 419 (Fla. 3d DCA 1979) ("Expenses incurred by a secondarily liable carrier in the defense of its insured, have been universally awarded when that company sues a primary insurer of the same insured, which [s]hould have undertaken that defense*.*").  To determine the amount of attorney's fees to be awarded, "Florida law applies the lodestar method, which requires courts to determine the number of hours reasonably expended on the litigation and the reasonable hourly rate for the type of litigation, multiply the reasonable number of hours by the reasonable hourly rate, and, when appropriate, adjust the fee." *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 802

(11th Cir. 2014) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151–52 (Fla. 1985)).  The party moving for attorney's fees has the burden of proving the reasonableness of both the hourly rates and the amount of time expended.  *Kearney Constr. Co. v. Travelers Cas. & Sur. Co. of Am.*, No. 8:09-cv-1850-T-30CPT, 2019 WL 3208445, at *1 (M.D. Fla. June 28, 2019) (citing *Rowe*, 472 So. 2d at 1151), *report and recommendation adopted*, 2019 WL 3207025 (M.D. Fla. July 16, 2019).  To do so, the movant should present records detailing the amount of work performed.  *Id.*

While Continental is entitled to recover the attorney's fees and costs expended in its defense of NCP in the Underlying Action, it has failed to present sufficient records to demonstrate the reasonableness of the attorney's fees and costs paid to defend NCP.  Accordingly, the Court will grant summary judgment as to entitlement and direct Continental to file a separate motion to determine the amount under Local Rule 7.01(c).

## IV. CONCLUSION

It is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Dispositive Motion for Summary Judgment (Doc. 25) is **GRANTED in part** as to Nationwide's duty to defend and Continental's entitlement to attorney's fees and costs in defending the Underlying Action. Otherwise, Plaintiff's Motion is **DENIED**.  Insofar as Continental seeks declaratory relief regarding Nationwide's duty to indemnify, Continental's claim is not ripe and is therefore **DISMISSED without prejudice** pending resolution of the Underlying Action.

2. Defendant's Cross-Motion for Summary Judgment (Doc. 29) is **DENIED**.

12

3. The Court retains jurisdiction to determine Plaintiff's entitlement to attorney's fees and costs in defending the Underlying Action. Continental is directed to file a separate motion to determine the amount of attorney's fees and costs under Local Rule 7.01(c) on or before **October 22, 2021**.

4. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant providing that Defendant has a duty to defend NCP Fund I Holding, LLC in the Underlying Action pursuant to the Nationwide Policy. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on September 28, 2021.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record